UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SHALMONIK CANNON, ) | |
| EARLWAYNE DAVIS ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CASE NO. 1:06-CV-267 |
| ) | |
| OFFICER JASON CHRISTOPHER, and ) | |
| OFFICER JEFF WELLS ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is Defendants' Motion for Partial Summary judgment filed on March 13, 2007. After receiving an extension of time to respond, Plaintiffs did so on May 15, 2007 to which Defendants replied on June 1, 2007.[1] For the following reasons, the Defendants' motion will be GRANTED in part and DENIED in part.

## APPLICABLE STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose

---

[1] This case was originally assigned to Honorable Allen Sharp and the present motion set for oral argument. However, on August 3, 2007, this case was reassigned to the undersigned and, upon review of the filings, the court concludes that the case will not benefit from oral argument.

1

summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## **FACTUAL BACKGROUND**

On July 4, 2004, plaintiffs Shalmonik Cannon ("Cannon") and Earlwayne Davis ("Davis") were driving along Ninth Street in Marion, Indiana in Cannon's 1993 Lincoln Signature Series Town Car. Cannon was the vehicle's driver with Davis in the passenger seat. The two had dropped a friend off at his home and, after departing the friend's house, they noticed a Marion City Police vehicle behind them. The officer in the squad car activated his emergency lights at which time

2

Cannon pulled the vehicle onto the shoulder of the road. Defendant Officers Jason Christopher and Jeff Wells (hereafter, "Officer Christopher" and "Officer Wells") exited the squad car and approached Cannon's vehicle.

Officer Wells informed Cannon that he was stopped for improperly displaying his license plate and asked him for his license and registration. Cannon provided the documentation requested and attempted to exit his vehicle to examine his license plate. Officer Wells instructed Cannon to remain in the vehicle. Officer Wells did not request identification from Davis because he recognized him. Davis informed Officer Wells that he had a gun and that it was on the floor of the backseat. Officer Wells then ordered Cannon and Davis to place their hands on the dashboard and walked around to the passenger side of the vehicle, reached through the window, and retrieved the handgun from the floor of the vehicle.

Officer Wells next ordered Cannon and Davis out of the vehicle, patted them down, and placed them in handcuffs. Officer Wells asked for consent to search the vehicle which Cannon refused. Throughout this time, Officer Christopher was present but did not speak to either Cannon or Davis.

Despite the absence of consent, the plaintiffs assert that both officers began searching the vehicle. During the search of the car's interior, the officers found a bag containing crack cocaine inside the armrest of the passenger side door, and a second handgun in the glove compartment. Officers also found $7,000 cash inside a sneaker in the trunk. Davis was in possession of a hotel key to a room at the Clarion Inn in Marion.

Cannon and Davis were placed under arrest and transported to the Grant County Jail. During their processing inside the jail, officers found seven grams of crack cocaine on Cannon's person

along with marijuana and $300 cash. A second hotel key to the Clarion Inn in Marion was found as well. Cannon admitted that he had been smoking crack earlier in the day.

The Marion Police then obtained a search warrant and officers, other than the ones identified in this lawsuit, searched the two rooms at the Clarion Inn where they found crack cocaine and significant amounts of cash.

Thereafter, Cannon was charged with possession of crack cocaine and conspiracy to deal crack cocaine. Davis was charged with possession of narcotics. Attorneys representing Cannon and Davis filed a motion to suppress evidence seized in the various searches on the grounds that the officers did not have probable cause to stop Cannon's vehicle. The state court, in turn, granted the motion to suppress finding that the information on the license plate was "readily discernible" as required by Indiana law despite the improper positioning of the plate.[2] Subsequently, the charges against both Cannon and Davis were dismissed. All told, Davis spent 16 months incarcerated in the Grant County Jail and Cannon spent 14 months there.[3]

Based upon the above facts, Cannon and Davis filed the instant case against Officers Wells and Christopher asserting that the officers subjected them to an "unlawful stop, unlawful searches, false arrest," as well as unlawful detention and malicious prosecution in violation of their Fourth and Fourteenth Amendment rights under the Constitution. Defendants have moved for partial summary judgment on these claims contending that the false arrest and malicious prosecution claims are not

---

[2] The court concluded that the license plate was securely attached by a bolt in the upper left hand corner of the plate but the bolt in the upper right hand corner was missing causing the plate to drop slightly on the right side.

[3] Although a bond had initially been set by the court, neither Cannon nor Davis could afford to bond out of jail. There is no explanation in the briefs why Cannon and Davis spent unequal amounts of time incarcerated.

4

supported by the factual record and that Davis has no standing to assert a violation of his Fourth Amendment rights since he was not the owner of the vehicle stopped by the officers. The court turns now to a discussion of these arguments.

## **DISCUSSION**

Section 1983 creates a cause of action to remedy certain deprivations of federal rights, but it is not a source of substantive rights. *See* Albright v. Oliver, 510 U.S. 266 (1994); *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (noting that "[section 1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes"). To determine whether a given right may be enforced through section 1983, courts look to the underlying constitutional provision that the plaintiff seeks to enforce. Here, the plaintiffs assert (1) that the defendant officers initiated a criminal prosecution against them without probable cause, in violation of their rights under the Fourth Amendment; and (2) that they were subjected to an unreasonable search and seizure also in violation of the Fourth Amendment. Each of these claims shall be addressed in turn.

### **False Arrest and Malicious Prosecution**

Federal courts recognize constitutional torts for false arrest, malicious prosecution, and imprisonment under the Fourth Amendment and § 1983.[4] *See, e.g., Wallace v. City of Chicago,* 440

---

[4]To the extent plaintiffs are seeking redress under the Fourteenth Amendment through 42 U.S.C. §1983 for due process violations arising out of their arrest, the Seventh Circuit does not permit such claims. *See Newsome v. McCabe,* 256 F.3d 747, 750-51 (7th Cir.2001) ("[W]hen a state-law remedy exists ... due process of law is afforded by the opportunity to pursue a claim in state court ...."). Rather, the remedy for such a violation is afforded by state law. (*Id.*). The Seventh Circuit has left open the possibility of other malicious prosecution claims arising "under the language of the Constitution itself." *Newsome,* 256 F.3d at 751. The parties have not argued, cited to any case law, or disputed that plaintiffs

5

F.3d 421, 425 (7th Cir.2006); *Ienco v. Angarone,* 429 F.3d 680, 683 (7th Cir.2005) (*Ienco V* ) ("[A] false arrest is an unreasonable seizure prohibited by the Fourth Amendment."); *Lambert v. Williams,* 223 F.3d 257, 262 (4th Cir.2000) ("[A § 1983 malicious prosecution' claim.... ] is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution-specifically, the requirement that the prior proceeding terminate favorably to the plaintiff.")[5].

Defendants move for summary judgment on the plaintiffs false arrest and malicious prosecution claims urging that the claim must be dismissed because probable cause to arrest is an absolute defense to any claim under §1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution. *Potts v. City of Lafayette,* 121 F.3d 1106, 1113 (7th Cir.1997). Plaintiffs respond by asserting that the state court previously concluded that the officers did not have probable cause to arrest them when they determined that the original stop of the vehicle was without proper justification and suppressed all evidence flowing from the original stop. Plaintiffs further urge that the absence of proper justification for the stop, in turn, precludes this

---

can assert a Fourth Amendment claim for malicious prosecution arising out of their arrest and thus, the court considers it here.

[5]As the Supreme Court explained in *Wallace v. Kato,* --- U.S. ----, ----, 127 S.Ct. 1091, 1095, --- L.Ed.2d ----, ---- (2007), "The sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process." Thus, "a false imprisonment ends once the victim becomes held pursuant to such process-- when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* Once the detention is coupled with legal process, the continued "detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Id.* ("From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir.2004)).

court from concluding that the officers had probable cause at the point of their arrest.

Defendants contend that probable cause existed from the events occurring after the stop even if the initial stop was lacking reasonable suspicion and/or probable cause as found by the state court. To this end, Defendants cite *Townes v. City of New York,* 176 F.3d 138 (2d Cir. 1999) wherein the Second Circuit concluded that the exclusionary rule and the related doctrine of fruit of the poisonous tree did not apply to a civil rights action brought under §1983. As is the case here, the plaintiff in *Townes* was allegedly subjected to an illegal search and seizure that led to the discovery of handguns which, in turn, led to the plaintiff's arrest, incarceration, and subsequent conviction. On appeal, the conviction was reversed and the appellate court determined that the officers lacked probable cause to stop and search him. The plaintiff then sought damages for injuries "derivative" of the search and seizure including his arrest and incarceration.

According to the *Townes* court, the plaintiff could not state a claim for false arrest because although the defendants lacked probable cause to stop and search him, they "certainly had probable cause to arrest him upon discovery of the handguns." *Id.* at 149. The Second Circuit explained that, "a §1983 action, like its tort analogs, employs the principle of proximate causation," and that adopting the fruit of the poisonous tree doctrine in a §1983 action would, "impermissibly recast the relevant proximate cause injury to one of taint and attenuation" and serve to "elongate the chain of causation." *Id.* at 141. Thus, the court concluded that "the lack of probable cause to stop and search does not vitiate the probable cause to arrest." *Id.* at 149.

Several federal courts in the Seventh Circuit have adopted the *Townes* principle and applied it to dismiss cases where probable cause existed despite an allegation of an improper initial stop and search. For instance, in *Bradshaw v. Chicago Police Officer Thomas Mazurski*, 2004 WL 170337

7

(N.D. Ill., 2004), the plaintiff argued that the search that led to the discovery of evidence was without probable cause thereby eliminating probable cause for his arrest. Citing to *Townes,* the court held:

> The fact that the search might not have been supported by probable cause does not establish a claim for false arrest and malicious prosecution, however. Although that evidence might not have been admissible in a criminal trial as a result of the exclusionary rule, that does not mean that such evidence could not be used to establish probable cause for plaintiff's subsequent arrest and prosecution.

*Id. at \*6.*

Similarly in *Ferrell v. Bieker*, 2006 WL 287173 (N.D.Ind. 2006), Judge Springmann soundly rejected the plaintiff's argument that probable cause cannot exist because the defendant officers' initial violation of the Fourth Amendment tainted the discovery of drugs in his car, explaining at length:

> ...[T]he weight of authority found by the Court holds that the "fruit of the poison tree" doctrine, which requires the exclusion of evidence found as a result of a violation of the Fourth Amendment in a criminal trial, does not apply in a § 1983 action. *See Townes v. City of New York,* 176 F.3d 138, 149 (2d Cir.1999) ("[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); *Padilla v. Miller,* 143 F.Supp.2d 479 (M.D.Pa.2001) ("[T]he courts that have addressed the issue have uniformly concluded that the exclusionary rule is not applicable in a § 1983 action.") (collecting cases); *Reich v. Minnicus,* 886 F.Supp. 674 (S.D.Ind.1993).
>
> There are several reasons for this rule. The Supreme Court has stated that the determination of what damages are available for § 1983 claims is to be guided in part by examining common law tort rules "defining the elements of damages and the prerequisites of recovery...." *Heck v. Humphrey,* 512 U.S. 477, 483, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In considering the common law rules applicable to a § 1983 claim for damages resulting from an illegal search and subsequent arrest and prosecution, the Third Circuit in *Hector v. Watt,* 235 F.3d 154, 156 (3d Cir.2000), found that, traditionally, a civil plaintiff subjected to an illegal search could collect damages arising only from the search, and could not collect damages for prosecution, conviction, or incarceration resulting from the search. *Id.* (citing Akhil Reed Amar, *The Constitution and Criminal Procedure* 20-25 (1997)). The rule makes sense, as "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it

8

>uncovers crime, which is no evil at all," *Hector,* 235 F.3d at 157 (quoting *Townes,* 176 F.3d at 148), and it would be odd if "the law breaker whose Fourth Amendment rights are violated recovers more than an innocent victim of the same unlawful search and seizure." *Padilla,* 143 F.Supp. at 492. Another consideration is that the "fruit of the poisonous tree" doctrine is not constitutionally required; it is a "judicially created remedy designed to safeguard Fourth Amendment rights." *United States v. Leon,* 468 U.S. 897, 906 (1984). The deterrence achieved by applying the exclusionary rule to criminal cases and by allowing civil liability for Fourth Amendment violations is sufficient, and any additional deterrence to be gained by applying the rule to civil cases is outweighed by the societal cost of excluding the evidence. *See Jonas v. City of Atlanta,* 647 F.2d 580, 588 (5th Cir.1981). Thus, the determination of whether the Defendants had probable cause to arrest the Plaintiff can take account of evidence that may have been found as a result of a constitutional violation.

*Id.* at *7.

Given the above authorities, plaintiffs in this case face a significant impediment to the pursuit of their false arrest and malicious prosecution claims under the Fourth Amendment. While it is true that the officers lacked reasonable suspicion or other cause to stop and detain Cannon's vehicle (at least that is what the state court held), once they did, they obtained sufficient evidence to properly arrest the plaintiffs with probable cause.

An arrest is supported by probable cause if, at the time of the arrest, "the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee was committing or had committed, a crime." *Spiegal v. Cortese,* 196 F.3d 717, 725 n. 1 (7th Cir.1999) (internal quotation marks omitted). Reading the facts favorably to the plaintiffs, after the defendant officers approached the vehicle, Davis alerted them to the presence of a gun in the backseat. For officer safety, the defendants were justified in removing the gun from the vehicle and asking the occupants to step out of the vehicle. The defendants were further justified, for officer safety, to

9

perform a limited pat down of their outer clothing and to check the passenger compartment for more weapons.[6] It was this search that yielded additional evidence including the presence of drugs and cash which gave rise to the probable cause for the plaintiff's arrest. Accordingly, while the initial stop of the vehicle was problematic as found by the state court, the officers did, by virtue of events occurring after the stop, have sufficient facts and circumstances to "to warrant a prudent man in believing that the arrestee was committing or had committed, a crime." *Spiegal,* 196 F.3d at 725 n. 1. Therefore, because probable cause to arrest the plaintiffs existed, their civil claims under 42 U.S.C. §1983 for false arrest and malicious prosecution must be dismissed. Defendants' Motion for Summary Judgment is therefore GRANTED as to these claims.

**Search and Seizure**

Defendants also move for summary judgment on Davis's claim for unlawful search and seizure arising from the stop of the car contending that Davis, as only an occupant of the vehicle owned by Cannon, lacks standing to object to the stop and search of that vehicle. See *Rakas v. Illinois,* 439 U.S. at 148-149, 99 S.Ct. 421 (1978) (holding that a passenger does not have a reasonable expectation of privacy in an automobile belonging to another). However, the Supreme Court recently held in *Brendlin v. California* that a passenger in a vehicle stopped by the police is seized by the stop within the meaning of the Fourth Amendment. 551 U.S. ___, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). As the Court in *Brendlin* explained, "[a] traffic stop necessarily curtails the

---

[6]Plaintiffs contend that they did not give consent for the officers to search the car. Regardless of whether consent was given, the officers clearly had a right to ensure their own safety by making certain no additional weapons were in the vehicle. Indeed, the Supreme Court has long held that ensuring officers' personal safety is of critical importance in the conduct of traffic stops. *See United States v. Hensley,* 469 U.S.221 (1985); *Maryland v. Wilson*, 519 U.S. 408 (1997) (holding that a police officer may as a matter of course order the driver and passengers of a lawfully stopped car to exit the vehicle).

travel a passenger has chosen just as much as it halts the driver..." 551 U.S. —, 127 S.Ct. At 2407. If a passenger is considered "seized" for Fourth Amendment purposes when a police officer makes a traffic stop, that passenger may then challenge the constitutionality of the actions taken during that stop. *Id.* at 2406-2407. Thus, a passenger has standing to challenge a constitutionally improper traffic stop, detention, or arrest on Fourth Amendment grounds and Defendants' motion for summary judgment on this claim must be DENIED.

This said, however, the court is mindful that it has already foreclosed plaintiffs from asserting claims arising out of their arrest and subsequent prosecution. This does not mean that they do not have a valid Fourth Amendment claim for the illegal stop of the vehicle and damages flowing from that allegedly illegal stop. As the Second Circuit held in *Townes*, *infra.*, "[v]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy – including (where appropriate) damages for physical injury, property damages, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and subsequent criminal prosecution." *Townes*, 176 F.3d at 148-49. Indeed, according to the Second Circuit,

> No Fourth Amendment value would be served if Townes, who illegally possessed firearms and narcotics, reaps the financial benefit he seeks. Townes has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment.

*Id.* Accordingly, plaintiffs still face a stiff hike to prove they suffered some damage, aside from their arrest and prosecution, as a result of the defendants' actions. Nevertheless, their Fourth Amendment claim for illegal search and seizure arising from the stop of the vehicle remains.

11

**Qualified Immunity**

Finally, defendants assert that they are entitled to qualified immunity on plaintiffs' false arrest and malicious prosecution claims.[7] Because the court has already granted summary judgment on the false arrest and malicious prosecution claims, the court needn't determine whether the officers are entitled to qualified immunity on these claims.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Partial Summary Judgment is GRANTED in part and DENIED in part. Plaintiffs are entitled to proceed on their claim under 42 U.S.C. §1983 for violation of their Fourth Amendment rights arising from the traffic stop of the vehicle. Summary judgment in favor of the defendants is granted as to all other claims.

Entered: This 6th day of September, 2007

                                        s/ William C. Lee
                                        United States District Court
                                        Northern District of Indiana

---

[7] Defendants do not assert qualified immunity relative to the initial traffic stop and thus, the court does not consider this issue presently. *See Memo in Support of Partial Summary Judgment,* p. 1 (asserting the qualified immunity defense only as to false arrest and malicious prosecution claims).

12